EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya<br>         Peticionario<br><br>              v.<br><br>Osvaldo González Zayas, etc.<br>    Recurridos | Certiorari<br><br>2001 TSPR 152<br><br>155 DPR _____ |

Número del Caso: CC-2001-732


Fecha: 2/noviembre/2001


Tribunal de Circuito de Apelaciones:
                              Circuito Regional V


Juez Ponente:
                    Hon. Rafael Ortiz Carrión


Abogado de la Parte Peticionaria:
                    Lcdo. Alexis D. Mattei Barrios

Abogado de la Parte Recurrida:
                    Lcdo. Carlos J. Meléndez Collazo


Materia:  Ejecución de Hipoteca



        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Banco Bilbao Vizcaya

    Peticionario

        vs.                    CC-2001-732         CERTIORARI

Osvaldo González Zayas, etc.

    Recurridos


RESOLUCIÓN

San Juan, Puerto Rico, a 2 de noviembre de 2001


       A la solicitud de certiorari radicada por el peticionario, Banco Bilbao Vizcaya, se provee no ha lugar.

       Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Voto disidente. El Juez Presidente señor Andréu García no interviene. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Rivera Pérez no intervinieron.


                           Isabel Llompart Zeno
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya

      Peticionario

          vs.                    CC-2001-732      CERTIORARI

Osvaldo González Zayas,
María Elena Ríos Rivera, etc.

      Recurridos

VOTO DISIDENTE EMITIDO POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 2 de noviembre de 2001

En una ocasión anterior relacionada al caso de epígrafe, y ante una actuación errónea de parte de una mayoría de los integrantes del Tribunal, meramente nos limitamos a hacer constar que "expediríamos" el recurso radicado.

Hoy sentimos la obligación, y la necesidad, de expresar por escrito nuestra inconformidad con la actuación de la Mayoría, nuevamente errónea, en el presente caso.

I

R & G Mortgage Corporation, institución bancaria sustituida en el pleito que origina este recurso por el peticionario Banco Bilbao Vizcaya, radicó demanda sobre ejecución de hipoteca ante

el Tribunal de Primera Instancia contra Osvaldo González, su esposa Marta E. Ríos, y la sociedad legal de gananciales compuesta por ambos, en la que alegó incumplimiento por los demandados con el contrato de préstamo hipotecario que éstos habían suscrito.

La parte demandada contestó la demanda, negando el incumplimiento, basando su negativa en que, alegadamente, el Banco arbitrariamente se había negado a recibir los pagos mensuales que ellos habían hecho. La parte demandada, además, reconvino contra el Banco por unos daños y angustias mentales que, alegadamente, la actuación de éste, al radicar la demanda, le había causado.

El tribunal de instancia determinó, en lo pertinente, que la consignación de los pagos por los demandados había sido correctamente hecha y, en consecuencia, declaró sin lugar la demanda de ejecución radicada. En lo relativo a la reconvención de la parte demandada, el referido foro primario señaló una vista con el propósito de dilucidar los alegados daños.

El Banco Bilbao Vizcaya acudió --vía recurso de apelación-- ante el tribunal de Circuito de Apelaciones. Dicho foro apelativo, mediante sentencia a esos efectos, sorprendentemente confirmó la desestimación de la ejecución de hipoteca a pesar de que revocó la parte del dictamen del tribunal de instancia que había declarado "bien hecha" la consignación de los pagos realizados por los esposos demandados. Decimos "sorprendentemente" debido al hecho de que, si la consignación de los pagos no fue correctamente hecha por los demandados, éstos incumplieron, razón por la cual la demanda de ejecución resultaba procedente. Por otro lado, el foro apelativo intermedio se "abstuvo" y no pasó juicio sobre el dictamen del tribunal de instancia relativo a la reconvención.

Inconforme, naturalmente, con dicha sentencia el Banco Bilbao Vizcaya acudió --vía certiorari-- ante este Tribunal. Mediante Resolución, de fecha 16 de marzo de 2000, este Foro declaró "no ha lugar" al recurso radicado, haciéndose constar en dicha Resolución que el Juez suscribiente "expediría" y que el Señor Juez Presidente "no interviene" en el caso.

Así las cosas, y habiendo retornado el caso al tribunal de instancia, mediante sentencia a esos efectos dicho foro primario declaró con lugar la reconvención instada por la parte demandada, concediéndole a ésta la suma de dieciséis mil dólares ($16,000.00) por concepto de los daños y perjuicios sufridos y la suma de dos mil dólares ($2,000.00) por concepto de honorarios de abogados.

El Banco Bilbao Vizcaya acudió, nuevamente, en apelación ante el Tribunal de Circuito de Apelaciones en revisión de la referida actuación. El foro apelativo intermedio mediante sentencia a esos efectos, y utilizando sus propias palabras, "modificó" la sentencia instada por el tribunal de instancia, a saber: revocó aquella parte de la misma que declaraba con lugar la reconvención instada por la parte demandada, dejando sin efecto, además, la imposición de honorarios de abogado, por razón de temeridad, por la suma de $2,000.00. Ello no obstante, el foro apelativo intermedio --considerando "... que las angustias sufridas por los apelados pueden ser compensadas mediante la imposición de honorarios de abogados" y que el Banco había

actuado con gran temeridad-- devolvió el caso al tribunal de instancia para que ese foro impusiera una suma, por concepto de honorarios de abogado por temeridad, proporcional a las circunstancias particulares del caso.

"Al buen entendedor, con pocas palabras basta"; respondiendo al mandato tácito del tribunal apelativo intermedio de aumentar la suma que anteriormente había impuesto por dicho concepto, el foro de instancia dictó sentencia y le impuso a la parte demandada la suma de diez mil dólares ($10,000.00) por concepto de honorarios de abogado; sentencia que el Banco Bilbao Vizcaya apeló y que el tribunal apelativo confirmó.

Acude ante este Tribunal el Banco Bilbao Vizcaya --por segunda ocasión-- en solicitud de que se le haga justicia. Una mayoría de los integrantes del Tribunal en el día de hoy deniega, nuevamente, su recurso. <u>Disentimos</u>.

II

Distinto a la jurisdicción federal, en la cual la concesión de honorarios de abogado en un litigio tiene el propósito principal de <u>recompensar</u> a la parte victoriosa por los gastos en que razonablemente incurrió durante la tramitación del proceso judicial, en nuestra jurisdicción el propósito fundamental de la Regla 44.1(d) d Procedimiento Civil --fuente estatutaria para la concesión de honorarios de abogado-- es el de <u>penalizar o sancionar</u> a la parte que por su temeridad, obstinación o contumacia obliga a la otra parte a asumir y sufrir las molestias, gastos e inconveniencias de un litigio innecesario. <u>Corpak, Art Printing</u> v. <u>Ramallo Brothers</u>, 125 D.P.R. 724 (1990). Dicho de otra manera, al imponer una suma de dinero por concepto de honorarios de abogado, no puede ser factor determinante para el tribunal la cantidad de dinero, considerable o poca, en honorarios de abogado que efectivamente hubiese gastado en el caso la parte victoriosa; debe mantenerse presente que "... el grado o intensidad de la conducta temeraria o frívola ...", en que incurrió la parte perdidosa, es el criterio o factor determinante y crítico a ser tomado en consideración por el tribunal al determinar la cuantía de los honorarios de abogado a imponerse a dicha parte. <u>Corpak, Art Printing</u>, ante, a la página 738.

No teniendo la imposición de honorarios de abogado, por razón de temeridad, el propósito de recompensar a la parte victoriosa por los gastos legales en que efectivamente ésta incurrió, <u>mucho menos puede tener la referida imposición el propósito</u> --expresamente consignado, en el presente caso, por el Tribunal de Circuito de Apelaciones, como fundamento para su errónea decisión-- <u>de recompensar a los demandados por las "angustias sufridas" por éstos como consecuencia de la actuación del Banco demandante al radicar la demanda en su contra.</u>

Lo erróneo de la actuación del Tribunal de Circuito de Apelaciones, en este respecto, "salta a la vista y hiere la retina". <u>In re: Roldán González</u>, 113 D.P.R. 238 (1982). <u>Ahora bien</u>, como la revisión, no hay duda, se da contra la sentencia y no contra los fundamentos expresados en la misma, <u>Piñeiro</u> v. <u>International Air Service</u>, 140 D.P.R. 343 (1996), analizamos si el resultado a que llegó el referido tribunal apelativo intermedio es correcto o no; <u>esto</u>

es, si procedía que dicho foro judicial dejara sin efecto la sentencia dictada por el tribunal de instancia --en la cual se había condenado al Banco demandante a pagarle a los demandados la suma de $16,000.00, por los daños por ellos sufridos, y la suma de $2,000.00, por concepto de honorarios de abogado-- y devolviera el caso al tribunal de instancia para la imposición de una suma mayor por concepto de honorarios de abogado.

Comenzamos por recordar que nuestro sistema de derecho es uno adversativo y rogado, el cual descansa sobre la premisa de que las partes son los mejores guardianes de sus derechos e intereses. Lloréns Quiñones v. Pierluisi, res. el 26 de septiembre de 2000, 2000 TSPR 138.

Ello resulta ser de cardinal importancia en el presente caso por cuanto procede que recordemos que la sentencia mediante la cual el tribunal de instancia condenó en la suma de $16,000.00 al Banco demandante, por concepto de daños y perjuicios, y le impuso a éste el pago de $2,000.00, por concepto de honorarios de abogado, únicamente fue revisada por el Banco Bilbao Vizcaya. Ello significa que, al no radicar los demandados reconvinientes recurso de revisión alguno, éstos acataron la sentencia dictada; esto es, y dicho de otra manera, éstos estuvieron conformes con lo resuelto por el tribunal de instancia.

Ante el recurso de apelación instado por el Banco Bilbao Vizcaya --en el cual se cuestionó la imposición al Banco de los $16,000.00, por concepto de daños, y los $2,000.00, por concepto de honorarios de abogados-- ¿qué podía hacer el Tribunal de Circuito de Apelaciones? Independientemente de su corrección jurídica, el foro apelativo intermedio en primer lugar, podía: confirmar en todas sus partes la sentencia apelada; en segundo término, podía modificar la referida sentencia, reduciendo la cuantía de $16,000.00 o la cuantía de $2,000.00, como también podía eliminar la partida de honorarios y dejar la otra; y, en tercer lugar, dicho foro podía revocar totalmente la sentencia.

Lo que no podía hacer el tribunal apelativo intermedio era aumentar los $16,000.00 y los $2,000.00, ya que los demandados no acudieron ante dicho foro judicial en solicitud de ello. El referido foro judicial no tenía autoridad para así actuar.

¿Qué hizo? Revocó la sentencia, lo que podía hacer, e indirectamente hizo lo que no podía hacer: devolvió el caso al tribunal de instancia para que éste aumentara la suma de dinero concedida por concepto de honorarios de abogado.

Dicha actuación es una total y completamente errónea que no debe prevalecer. Es por ello que disentimos.[1]

---

[1] No debemos perder de vista, por último, que dicha errónea actuación la llevó a cabo, y la ordenó, el Tribunal de Circuito de Apelaciones en un caso en que ambas partes pueden ser consideradas victoriosas y perdidosas. Ello así ya que, en relación con la demanda radicada, el Banco demandante perdió y la parte demandada resultó victoriosa mientras que, en relación con la reconvención radicada, la parte demandada perdió y el Banco demandante prevaleció. En esa clase de situación, ¿se "cancela o anula" la posible temeridad en que hayan podido incurrir las partes o se tiene que analizar, por separado, la situación de la demanda y la reconvención?

FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

Aun cuando nos inclinamos por la segunda de las alternativas, <u>no</u> nos expresamos al respecto por considerarlo innecesario.